IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

AST PRODUCTS, INC.,

          Plaintiff,

v.                                      CIVIL ACTION NO. 3:12-05403

MEDKOTE, LLC, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant Matthew Bird's two motions to dismiss. ECF Nos. 27, 37. For the reasons stated below, both motions are **DENIED**.

### I. Statement of Facts

AST Products, Inc. ("AST"), commenced this litigation on September 13, 2012 against the following defendants: Medkote, LLC, David Webb, Matthew Bird, Clinton Bird, Scott Webb, and Suresh Kalatoor. Compl., ECF No. 1. This litigation concerns LubriLAST, the collective name for certain lubricious coating processes and technology used with medical devices. LubriLAST is protected by two patents, and AST holds an exclusive worldwide license for LubriLAST. AST entered into an agreement with Alcon Universal, Ltd.—succeeded by Alcon, Inc. ("Alcon")—whereby Alcon Universal held an exclusive license to LubriLAST for use with intraocular lens delivery. As part of this agreement, AST's trade secrets were to be treated as confidential. AST alleges that Defendants David Webb and Suresh Kalatoor were employees of an Alcon subsidiary named Alcon Research, Ltd., and thereby had access to AST trade secrets.

On December 28, 2009, Matthew Bird—David Webb's brother-in-law—allegedly applied to register a limited liability company named Medkote, LLC ("Old Medkote"). The company's stated legal purpose was to "research and develop lubricious coatings for industrial and specialty applications." Compl. ¶ 51. Although Matthew Bird was the sole shareholder at this time, Old Medkote's telephone number was registered to Clinton Bird, and the corporate address listed was that of David Webb. On December 23, 2010, Old Medkote named David Webb as the agent for service of process, added him as member/manager, and changed its principal office location. On that same day, Clinton Bird, Scott Webb, and Suresh Kalatoor were also added as members/managers, and Matthew Bird was removed as a member/manager. Old Medkote removed Scott Webb and Clinton Bird as members/managers on January 25, 2011. David Webb, acting as President, submitted Articles of Termination for Old Medkote on January 13, 2012, and the West Virginia Secretary of State issued a Certification of Termination on January 16, 2012.

On January 25, 2010—less than a month after applying to register Old Medkote—Matthew Bird applied to register Chemblending, LLC, and he was the sole member upon registration. Again, the corporate address listed was that of David Webb. Also mirroring Old Medkote, on December 23, 2010, Chemblending changed its principal office location, named David Webb as the agent for service of process, and added David Webb, Clinton Bird, Suresh Kalatoor, and Scott Webb as members/managers. That same day, Matthew Bird was removed as a member/manager. Clinton Bird was removed on January 25, 2011. David Webb filed Articles of Termination for Chemblending on September 21, 2011.

Sometime after Old Medkote was formed, AST was informed that David Webb contacted an AST customer and indicated to that customer that he "and/or Old Medkote were a potential supplier of coatings and could provide/meet the AST's [sic] customer's coating needs." Compl. ¶ 99. In a telephone call with Alcon on May 14, 2010, Mr. Webb denied, *inter alia*: any such contact; that he had worked for any other company other than Alcon; that he had any contact with any lubricious coating company since November 2009; any affiliation with Old Medkote or Chemblending; and any plans to use confidential or proprietary information belonging to AST or Alcon. Although Mr. Webb stated in that call that "he had been off work from Alcon since November 2009," he sent a resignation letter to Alcon in June 2010.

A third company, Medkote, LLC ("New Medkote"), was registered in West Virginia on January 18, 2012. Plaintiff does not allege who registered this company.

In its Complaint, Plaintiff alleges that: Old Medkote's business activities involved the improper use of AST's trade secrets and patents; Defendants knew or should have known about this improper use; and New Medkote continues this improper use of trade secrets and patents, being a continuation of the defendant's joint venture with Old Medkote. In Count One, Plaintiff claims that Defendants infringed the two patents covering LubriLAST. In Count II, Plaintiff claims that Defendants violated the West Virginia Uniform Trade Secrets Act.

Defendant Matthew Bird ("Mr. Bird") subsequently filed a motion to dismiss, arguing that he was not properly served and therefore this Court does not have personal jurisdiction over him. ECF No. 27. Mr. Bird explains that the Complaint was filed on September 13, 2012, but Plaintiff did not even attempt to serve him until January 11, 2013 (and was unsuccessful), which

3

was the last date for proper service. Service was not completed until January 28, 2013, which is outside of the 120 days allowed for service.

      Plaintiff responds that the Court should deny Mr. Bird's motion because Mr. Bird evaded service and because this Court has the discretion to instead order service by another specified date. Also, service has indeed been effected, and good cause exists to allow service outside the 120-day period. ECF No. 28. Plaintiff points out that an agreement existed for some amount of time between counsel for Plaintiff and then-counsel for Defendants, whereby AST would grant extensions of the answer date and withhold service on certain Defendants, including Mr. Bird.

      Mr. Bird did not file a reply, but instead filed a second motion to dismiss, again asking for dismissal because service was not timely. ECF No. 37. He argues in the second motion that any attempt to evade service did not affect the time in which service was nonetheless required to be effected, and emphasizes that Plaintiff did not request an extension of time earlier. Mr. Bird also claims that because no resolution was offered in the course of negotiations between the parties, the negotiations do not provide a sufficient justification for extending the deadline for service. Mr. Bird states that "Plaintiff disregarded Old Medkote and Matthew Bird in their negotiations," and that he never received notification that he was allegedly using AST's trade secrets. Mr. Bird maintains that he is not involved in New Medkote and that Plaintiff "filed this torturous [sic] lawsuit with no statement as to the trade secret violation that occurred. Also "Medkote[']s product is clearly outside the guidelines of the patent shown in court documents."

      These two motions are now ripe for resolution. In Section II, the Court will discuss the special considerations involved with pro se filings. Section III addresses Mr. Bird's request for

dismissal based on improper service. Lastly, in Section IV, the Court discusses the sufficiency of the pleadings.

## II. Pro Se Filings

Special considerations arise when a case involves pro se pleadings such as Mr. Bird's motions. A court must construe pro se filings liberally, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In construing pro se filings liberally, however, the court must be careful not to "rewrite a petition to include claims that were never presented." *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Plaintiff asserts that Mr. Bird's first motion to dismiss, filed on March 21, 2013, is untimely, as an answer to the complaint is required within 21 days of service, per Federal Rule of Civil Procedure 12(a)(1)(A)(i). Because Defendant is proceeding pro se and because Plaintiff represented it will not be seeking a default judgment, this untimeliness does not impact the Court's decision.

Furthermore, although Mr. Bird's second filing is titled as a "motion to dismiss," ECF No. 37, it counters specific arguments from Plaintiff's response, and therefore has the substance of a reply brief. If construed as a reply brief, however, then this filing is untimely, as it was made 15 days after Plaintiff's response. Although Mr. Bird's first motion only attacks service, this second filing attacks service *and* the sufficiency of the complaint. Regardless of any concerns about the propriety of this second filing, the Court will consider on the merits the arguments

5

made by Mr. Bird in the second filing, because of the importance of construing pro se filings liberally.

### III. Service of Complaint

**A. Legal Standard**

Mr. Bird argues that the service in this case "is not authorized by the law of the State of West Virginia." ECF No. 27. This Complaint was filed in federal court, however, and so service is governed by federal law, not state law.[1]

Timeliness of service is governed by Federal Rule of Civil Procedure 4(m), which provides in pertinent part that:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The Advisory Committee noted how Rule 4(m), as amended in 1993, is a departure from the earlier version of Rule 4:

> The new subdivision [4(m)] explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.

Fed. R. Civ. P. 4, Advisory Committee Note, 1993 Amendment. The Supreme Court affirms in dicta that "good cause" is no longer required, stating that "in the 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120 day period 'even if there is no good

---

[1] Under Rule 4(e)(1), one method of service is to follow state law for serving the summons. However, this does not mean that state law governs service in this case. Rather, the Federal Rules of Civil Procedure merely allow state-law service as *one possible method* of service. Rule 4(e) allows for additional methods of service, as will be discussed subsequently.

6

cause shown.'" *Henderson v. United States*, 517 U.S. 654, 662 (1996) (quoting the Advisory Committee). There has been uncertainty in this Circuit, at least in the past, concerning the necessity of proving good cause in the wake of the 1993 Amendment. *See Morgan v. Sebelius*, No. 3:09-1059, 2010 WL 1404100 (S.D. W. Va. Mar. 31, 2010).[2] Despite the uncertainty, this Court has previously held that an extension can be granted even if good cause is not shown. *Id. See also Bennett v. Astrue*, No. 5:11-00270, 2011 U.S. Dist. LEXIS 115317, at *3 (S.D. W. Va. Oct. 5, 2011) (stating that "the Court finds that it has discretion to extend the 120-day period of time for service even in the absence of a showing of good cause," citing *Henderson* and *Morgan*); *Wallace v. Cmty. Radiology*, No. 1:09-cv-0511, 2011 WL 4596694 (S.D. W. Va. Sept. 30, 2011) (holding that good cause is not required). *But see Tenenbaum v. PNC Bank Nat'l Ass'n*, No. CIV.A. DKC 10-2215, 2011 WL 2038550 (D. Md. May 24, 2011) (noting that "while *Mendez* may stand on shaky footing, it remains the law of this circuit," and finding that good cause is required).

Although the Court has discretion to extend the time period for service even if good cause for extension is not shown, there are certain factors the Court should weigh when deciding whether to exercise this discretion:

> The Advisory Committee Note to Rule 4(m) provide[s] that "[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Fed. R. Civ. P. 4(m), Advisory Committee Note, 1993 Amendments; *see*

---

[2] In *Mendez v. Elliot*, 45 F.3d 75 (4th Cir. 1995), the Fourth Circuit Court of Appeals held that good cause is required to extend the 120-day period. In *Morgan v. Sebelius*, this Court noted the uncertainty created by *Mendez*, and that "[s]everal courts, including [the] Fourth Circuit Court of Appeals itself – in unpublished decisions – have questioned the continued validity of this holding [from *Mendez*] in light of amendments to Rule 4" and in light of *Henderson*. *Morgan*, 2010 WL 1404100, at *1.

*also Panaras v. Liquid Carbonic Indus. Corp.,* 94 F.3d 338, 341 (7th Cir. 1996). Other factors to consider are whether the defendant had notice of the suit and whether the defendant has been prejudiced. *Coleman v. Milwaukee Board of School Directors,* 290 F.3d 932, 934 (7th Cir. 2002).

*Wallace*, 2011 WL 4596694, at *5.

**B. Application**

Plaintiff explains that it delayed attempting service because an agreement was in place for some period of time between counsel for Plaintiff and then-counsel for Defendants, Mr. Pennington. Mr. Pennington affirmatively represented via email that he was representing all defendants. *See* Email from Mr. Pennington, Ex. 1-B, ECF No. 28-1. As part of this agreement, Plaintiff would delay serving Mr. Bird.

Private Investigator Cam Thompson attempted to personally serve Mr. Bird at his residence on January 11, 2013, but Mr. Bird drove away before Mr. Thompson could get close enough to effect service. Report of Investigation, Ex. 1-E, ECF No. 28-1. On January 15, Mr. Thompson at multiple times rang the doorbell at the residence and knocked on the main and side doors. *Id.* He again tried to effect service on January 19, but was unsuccessful. On January 28, Mr. Thompson rang the doorbell and Mr. Bird's mother answered the door. She refused to accept the papers, and Mr. Thompson left the papers on the porch. Aff. of Eulanda Gay Reynolds Bird, ECF No. 27 at 4.

Federal Rule of Civil Procedure 4(e) states in part that "an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by . . . leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Mr. Thompson's proof of service form indicates that Mr. Bird's mother was a

8

person of suitable age and discretion who resided at Mr. Bird's dwelling. Mr. Bird states that he lives in the "garage apartment" of the address where service was effected, but has not indicated that this "garage apartment" is in fact a separate apartment such that service at the door of the house was improper. *See Di Leo v. Shin Shu*, 30 F.R.D. 56 (S.D.N.Y. 1961) (where defendant and his daughter lived in the same apartment building but in different apartments, service upon daughter at the daughter's apartment did not create jurisdiction over defendant).

Although Mr. Bird's mother refused service, Mr. Thompson's act of leaving the documents on the porch after speaking with her constitutes sufficient service. *See Novak v. World Bank*, 703 F.2d 1305, 1310 n.14 (D.C. Cir. 1983) ("When a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person."); *Fed. Fin. Co. v. Longiotti*, 164 F.R.D. 419 (E.D.N.C. 1996) (finding that service was effected where private investigator attempted to give the defendant's wife an envelope containing legal documents, she knew he was attempting to serve documents, and private investigator left envelope on the doorstep.) Therefore, a proper method of service has occurred, outside of any concerns about timing.

As explained above, this Court has the discretion to extend the time period for service even if Plaintiff has not presented good cause for extension. Because the Court now exercises its discretion to allow the service that occurred, the Court need not make any finding about whether good cause has been shown.[3] Considering the *Wallace* factors, the Court notes that it is unclear when Mr. Bird had notice of the suit, and likewise unclear if the statute of limitations would bar refiling the action. However, the Court does find that Mr. Bird attempted to evade service on at

---

[3] It is therefore irrelevant whether Plaintiff offered a resolution in the course of the negotiations, as Mr. Bird brought up in his second motion.

least one occasion. Also, Mr. Bird does not allege that he never in fact received the documents left by Mr. Thompson. Mr. Bird does not point to any prejudice suffered as a result of the delay, and the Court finds that no prejudice occurred.[4] Accordingly, this Court holds that the allowable time for service should be extended to accommodate the actual service which has now been effectuated upon Mr. Bird.

## IV. Sufficiency of Complaint

### A. Legal Standard

A complaint must meet the pleading standard of Rule 8 in order to survive a motion to dismiss. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted). If the allegations in the complaint,

---

[4] Although the Court now exercises its discretion, it is troubling that Plaintiff did not attempt to serve Mr. Bird until the last day for service, and it is not clear from the record that Plaintiff is without fault for this delay. *See Fields v. Norfolk & S. Ry. Co.*, No. 3:12-cv-4046, 2012 WL 6554103, at *4-6 (S.D. W. Va. Dec. 14, 2012) (exercising discretion and holding that "[t]he time allowed for service should be extended to accommodate the actual service which has now been effectuated upon Defendant," and noting that "[e]ven if Defendant's employee had initially suggested that Plaintiffs delay service, Plaintiffs should have completed service within the timeframe when it became apparent that the parties would not settle the matter before the service period expired").

10

assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

**B. Application**

In his second motion to dismiss, Mr. Bird attacks this litigation on grounds not discussed in his first motion. He argues that "Plaintiff disregarded Old Medkote and Matthew Bird in their negotiations. While Old Medkote was in operation [Mr. Bird] never received a request or notification that [Mr. Bird] was using trade secrets." The Court interprets this to mean that, outside of any service concerns, Mr. Bird also takes issue with Alcon's or AST's decision not to send him a cease and desist letter[5] or otherwise contact him directly prior to commencing litigation. Although the timing of notification about potential infringement will impact the damages that Plaintiff ultimately receives,[6] this is not a ground for dismissal. Plaintiff was under the belief until March 2013 that Mr. Bird was represented by counsel for the other defendants. Aff. of Jeffrey A. Holmstrand, Ex. 1, ECF No. 28-1. Regardless of whether that belief was reasonable or not, the Court found in the previous Section that service was proper; Plaintiff's alleged non-inclusion of Mr. Bird in any outside communications does not justify dismissal.

Mr. Bird also states that "[a] trade secret complaint requires aggressive prosecution and no such action occurred in this case." It is not clear to the Court what Mr. Bird means by this statement. Mr. Bird further states that "Old Medkote and Medkote LLC are two different

---

[5] The Complaint alleges that Alcon sent David Webb a cease and desist letter on May 13, 2010. Compl. ¶ 101.

[6] *See* 35 U.S.C. § 287(a): "[N]o damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."

companies and Matthew Bird has no involvement in Medkote LLC whatsoever." The alleged wrongdoings named in the Complaint are not limited to Medkote LLC. Therefore, although Mr. Bird's alleged non-involvement in New Medkote may in the end relieve him of liability, this is not a proper ground for dismissal at this point.

Additionally, Mr. Bird states that Plaintiff "filed this torturous [sic] lawsuit with no statement as to the trade secret violation that occurred." Mr. Bird has not cited any legal authority indicating that failure to state the trade secret violation warrants dismissal. The Court is obliged to construe Mr. Bird's claim liberally, however, and notes that the Complaint never specifically alleges what "trade secrets" were misappropriated, whether they were product formulas, processes, methods, or something else. However, the Court is hesitant to dismiss the trade secret claim at this point, given that Mr. Bird does not present—and the Court has not readily found—any authority suggesting that this warrants dismissal. While Plaintiff has not presented any argument in response regarding the sufficiency of the Complaint, it would be premature to dismiss the trade secrets claim at this point.[7]

As for Mr. Bird's statement that "Medkote[']s product is clearly outside the guidelines of the patent shown in court documents," there is no evidence from Defendants thus far regarding the nature of Medkote's products, let alone indicating that its products "clearly" do not infringe AST's patents. That contention is a factual dispute best left to later stages of the litigation. The Court will therefore not grant dismissal at this point.

---

[7] The Court can only speculate why Plaintiff did not file a "response" to Mr. Bird's second motion to dismiss, or—if construing Mr. Bird's second motion as a reply brief—did not request leave to file a surreply.

**Conclusion**

For the reasons stated above, Mr. Bird's two motions are **DENIED**. The Court **FINDS** that service in this case upon Mr. Bird was proper.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: May 29, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE

14